IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIO GUZZO,** | : | **Civil No. 1:19-cv-1608** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ALLEN DISTRIBUTION,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant's Motion to Dismiss Count IV of the Amended

Complaint filed by Defendant Allen Distribution ("Defendant"). (Doc. 10.) For the

reasons outlined below, the court will grant the motion.

## I.    BACKGROUND

On October 3, 2017, Plaintiff Mario Guzzo ("Plaintiff" or "Mr. Guzzo")

applied to work for Defendant as a forklift operator. At the time he applied, Mr.

Guzzo was over forty years old and suffered from multiple debilitating conditions,

but neither his age nor his disabilities had hindered him from previously performing

work as a forklift operator. Mr. Guzzo also was convicted of possessing child

pornography approximately seven years before he applied for this position. (*See*

Doc. 10-1, p. 1.)[1]  Mr. Guzzo disclosed his conviction to Defendant as part of his

---

[1]      Defendant has attached a copy of Mr. Guzzo's job application to its motion to dismiss. Because this is a document clearly referred to and relied upon in Plaintiff's complaint, and Plaintiff has not raised any issue concerning its authentication, it is properly before the court.

application.  (*See id.*)  According to the complaint, Defendant denied Mr. Guzzo's application on the basis of his age, disabilities, and previous conviction, despite none of these facts bearing on his ability to safely and competently work as a forklift operator.

On September 17, 2019, Plaintiff filed an original complaint against Defendant.  (Doc. 1.)  On December 6, 2019, Plaintiff filed an amended complaint alleging Defendant discriminated against him on the basis of his age, disabilities, and previous conviction.  (Doc. 8.)  On December 20, 2019, Defendant filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of Plaintiff's claim that Defendant discriminated against him on the basis of his prior conviction.  (Docs. 10-11.)  Plaintiff filed a response, (Doc. 13) and Defendant has replied (Doc. 14.)  This matter is thus ripe for review.

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d

Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). The universe of facts upon which the court may rely includes those facts alleged in the complaint, facts which the court may take judicial notice of, and indisputably authentic documents referred to in the plaintiff's complaint. *Hartig Drug Co., Inc. v. Senju Pharm Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id*. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. In assessing the level of factual details required under *Twombly*, the Third Circuit has held:

> The Supreme Court reaffirmed that Fed. R. Civ. P. 8
> requires only a short and plain statement of the claim

> showing that the pleader is entitled to relief, in order to
> give the defendant fair notice of what the claim is and the
> grounds upon which it rests, and that this standard does
> not require detailed factual allegations.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations and

quotations omitted).

### III.   DISCUSSION

#### a. The Plain Language of § 9125 Unambiguously Regulates An Employer's Consideration of an Employee's Criminal Background Regardless of How the Information Was Acquired.

Today's dispute turns on the proper interpretation of 18 Pa.C.S.A. § 9125—

the Pennsylvania statute governing the conditions under which employers can

consider prior convictions by job applicants.  Under Pennsylvania law:

> The principal objective of interpreting a statute is to
> effectuate the intention of the legislature and give effect to
> all of the provisions of the statute. In construing a statute
> to determine its meaning, courts must first determine
> whether the issue may be resolved by reference to the
> express language of the statute, which is to be read
> according to the plain meaning of the words. When
> analyzing particular words or phrases, we must construe
> them according to rules of grammar and according to their
> common and approved usage. Words of a statute are to be
> considered in their grammatical context. Furthermore, we
> may not add provisions that the General Assembly has
> omitted unless the phrase is necessary to the construction
> of the statute. A presumption also exists that the
> legislature placed every word, sentence and provision in
> the statute for some purpose and therefore courts must give
> effect to every word.

4

*Commonwealth v. Lewis*, 180 A.3d 786, 788 (Pa. Super. Ct. 2018) (internal

quotations omitted).  The statute in question reads as follows:

> **(a) General rule.**--Whenever an employer is in receipt of
> information which is part of an employment applicant's
> criminal history record information file, it may use that
> information for the purpose of deciding whether or not to
> hire the applicant, only in accordance with this section.
>
> **(b) Use of information.**--Felony and misdemeanor
> convictions may be considered by the employer only to the
> extent to which they relate to the applicant's suitability for
> employment in the position for which he has applied.
>
> **(c) Notice.**--The employer shall notify in writing the
> applicant if the decision not to hire the applicant is based
> in whole or in part on criminal history record information.

18 Pa.C.S.A. § 9125.

Here, Plaintiff alleges that Defendant violated § 9125 by rejecting him based

on a prior, irrelevant conviction and failing to notify him of this in writing.

Defendant argues that § 9125 only applies if the Defendant learned of prior offenses

through a background check and that Defendant learned of Plaintiff's past

convictions through his job application.  In response, Plaintiff argues that § 9125

regulates an employer's consideration of an applicant's past criminal history

regardless of how it receives this information.  In examining § 9125's plain

language, the court concludes that the statute applies to applicable employers

regardless of how they receive the information at issue.

A grammatically-correct reading of § 9125 (a) breaks it down into three segments: (1) "[w]henever an employer is in receipt of information"; (2) "which is part of an employment applicant's criminal history record information file"; (3) "it may use that information for the purpose of deciding whether or not to hire the applicant, only in accordance with this section." The first segment designates the triggering event—an employer coming into possession of some type of information while considering a job applicant. This section's use of the passive voice demonstrates that there is no particular agent who must confer the information upon the employer. This leaves the operative question being whether the employer has come into possession of the information at issue.

The second segment is an adjective phrase modifying the type of information at issue. Only information that could be found in an applicant's "criminal history record information file" must be considered in the manner specified by this statute. A separate statutory provision defines "criminal history record information file" as:

> Information collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom. The term does not include intelligence information, investigative information or treatment information, including medical and psychological information, or information and records specified in section 9104 (relating to scope).

18 Pa.C.S.A. § 9102.

Hence, § 9125 only concerns employers who receive information that is actually within the applicant's criminal history file. It thus encompasses arrests and convictions and excludes civil judgments against the applicant, prior academic or job disciplinary actions, and expunged convictions. *See Foxworth v. Pa. State Police*, 402 F. Supp. 2d 523, 545 n.21 (E.D. Pa. 2005) (dismissing the plaintiff's § 9125 claim "because the statute relates to *criminal history record information*, which Foxworth does not have precisely because his record was expunged") (emphasis in original). The third segment is simple: it just indicates that once the first two sections are triggered, § 9125 governs how the employer can consider an applicant's criminal history record information when deciding whether to hire them.

Section (b) governs an employer's use of "[f]elony and misdemeanor convictions." Felony and misdemeanor convictions constitute "dispositions" of criminal charges, as defined in § 9102, axiomatically rendering them part of one's criminal history record information file. Section (b) uses the word "only" to establish the exclusive basis upon which an employer can consider an applicant's "[f]elony and misdemeanor convictions": when those convictions are relevant to the job at hand. *Lewis*, 180 A.3d at 788 ("[C]ourts must give effect to every word [in the statute]."); *see, e.g., In re Hammond*, 27 F.3d 52, 57 (3d Cir. 1994) (emphasizing the word "only" in a statute and holding that it rendered its terms exclusive).

Finally, § 9125(c) requires an employer to notify an applicant in writing in one circumstance: "if the decision not to hire the applicant is based in whole or in part on criminal history record information."

In short, looking at the plain language of all three sections of § 9125, and reading them together, there is no reasonable basis upon which the statute can be construed to only apply to employers who receive information by particular means. There is nothing in the statute's plain language that could justify reading such a limitation into it.  Further, such a limitation would clash with the passive voice used in section (a) as well as the use of the word "only" in section (b).  It is thus irrelevant to Plaintiff's claim how Defendant learned of his past conviction.

### b. Defendant's Reliance Upon Dicta Within Unpublished, Distinguishable Cases is Unavailing.

Defendant relies on an unpublished Third Circuit case that is distinguishable. In *Foxworth v. Pennsylvania State Police*, Mr. Foxworth applied for a job with the police, informing them that he had previously been arrested for and confessed to stealing $4,000 from a prior employer.  228 F. App'x 151, 152-53 (3d Cir. 2007). Because the offense was expunged, this information was not in his criminal history record file and thus did not come up as part of his background check.  *See id.*  The police nonetheless informed Mr. Foxworth that his theft disqualified him from the job and that he should withdraw his application.  *See id.*  Mr. Foxworth sued the

police, with his core argument being that they violated his due process rights by rejecting him for his criminal background.

The district court dismissed Mr. Foxworth's due process claim, pointing out that his prior conviction being expunged rendered it outside of the scope of § 9125. *See Foxworth*, 402 F. Supp. 2d at 545 n. 21.  On appeal, the Third Circuit affirmed. The court began its analysis of Mr. Foxworth's due process claim by noting that it was already well-established that applicants "have no property interest in trooper or police positions." *Foxworth*, 228 F. App'x at 154 (collecting cases).  The *Foxworth* court went on to say that "[n]otwithstanding this general rule," § 9125 was inapplicable because Mr. Foxworth's background check came up clean. *Id.* at 154-55.  Hence, the court's ultimate holding was that "[i]n  conclusion, Foxworth has no property right to future employment with the [police] that would allow him to prevail on a procedural due process claim against the automatic disqualification procedure." *Id.* at 158.

Examining this case on the whole, the *Foxworth* court's discussion of § 9125 was dicta.  Well-established law already demonstrated that job applicants do not have a due process right to employment with the police, rendering Mr. Foxworth's reference to § 9125 dead on arrival.  Moreover, today's holding is consistent with the holding and analysis in *Foxworth*.  While there is some language in *Foxworth* speciously suggesting that the employer's method of learning about Mr. Foxworth's

conviction rendered § 9125 inapplicable, a deeper examination of that court's analysis shows that it turned on the fact that Mr. Foxworth's expungement rendered his prior conviction outside of the scope of § 9125. Thus, while the court is not bound by *Foxworth*, its holding is consistent with that court's analysis.

Defendant also relies upon *Court v. Loews Philadelphia Hotel, Incorporated* for its reading of § 9125. 16-cv-4848, 2017 WL 569522 (E.D. Pa. Feb. 13, 2017). While the court disagrees with the *Loews* court's reading of *Foxworth*, it is a small and unnecessary part of Judge Pratter's well-reasoned opinion.

In *Loews*, Elena Myers sued a gym for negligent hiring and supervision, alleging she was sexually assaulted by one of the gym's masseuses who had been arrested for child rape and fired for sexually assault. *See id.* at *1-3. The gym moved to dismiss under 12(b)(6), arguing, in part, that even had it known about the masseuse's past arrest for allegedly raping a minor, § 9125 prevented it from considering this fact. *See id.* at *6. Like the *Foxworth* court, the *Loews* court began its analysis of § 9125 by pointing out no particular discussion of the statute was needed because it was procedurally improper at the 12(b)(6) stage. *Id.* ("It is premature at this juncture, however, to analyze the hypothetical application of the CHRIA based on information that the Gym Defendants might have accessed had they conducted a more thorough pre-employment investigation into [the masseuse's] past.").

Even if it was properly before the court, however, the *Loews* court identified three separate problems with this argument.  First, the *Loews* court held that the gym learned about the masseuse's past firing through an application, not a background check, rendering § 9125 inapplicable under *Foxworth*.  *Id.*  Second, the masseuse's past firing for sexual assault was a sufficient fact to make Plaintiff's claim survive 12(b)(6), and it constituted information that did not fall within the masseuse's criminal history record information.  *See id.*  Third, the *Loews* court also noted that it was possible the arrest would not have even been present in the masseuse's criminal background check—i.e. not part of his criminal history record information. *See id.* at *6 n. 8.

The court finds the small part of *Loews* cited by Defendant unpersuasive as applied here.  Because the movant's § 9125 argument was not properly before that court on 12(b)(6), the *Loews* court's analysis of that statute was dicta.  Moreover, while the court today disagrees with the *Loews* court's reading of *Foxworth*, the court agrees with the other two bases upon which that court denied the motion to dismiss—each of which was sufficient for its holding.  Thus, *Loews* does not compel the court to adopt Defendant's interpretation of § 9125.

### c.  Even If Defendant's Interpretation of § 9125 Is Reasonable, Its Interpretation Would Undermine the Purpose of the Statute.

Assuming that both Plaintiff's and Defendant's readings of § 9125 are reasonable, this would render the statute ambiguous.  *Del. Cnty. v. First Union*

*Corp.*, 992 A.2d 112, 118 (Pa. 2010) ("[A]mbiguity exists when there are at least two reasonable interpretations of the text under review."). In analyzing an ambiguous statute, the court "may consider the object to be attained . . . as well as the consequences of specific interpretations." *Id.* at 119; *see also* Pa. C.S.A. § 1921(c) (listing multiple factors a court can consider when a statute is ambiguous, including the purpose of the statute and the consequences of particular interpretations). Thus, under Pennsylvania law, the proper interpretation of § 9125 is the one that will yield consequences consistent with the statute's purpose.

A thorough review of the secondary sources and Pennsylvania case law discussing § 9125 make clear that its underlying purpose is to promote gainful employment by ex-convicts, decreasing the likelihood of recidivism, while nonetheless permitting employers to reject ex-convict applicants when there is a rational basis for doing so. *See* Katrina Liu, Reentering the City of Brotherly Love: Expanding Equal Employment Protection for Ex-Offenders in Philadelphia, 22 Temp. Pol. & Civ. Rts. L. Rev. 175, 184 & n.85 (2012) (explaining that § 9125 "reflect[s] a public policy of avoiding stigmatization and unreasonable restrictions on ex-offenders in the state") (citing *Hunter v. Port Auth. of Allegheny Cnty.*, 419 A.2d 631, 633-34 (Pa. Super. Ct. 1980); *Sec'y of Revenue v. John's Vending Corp.*, 309 A.2d 358, 362 (Pa. 1973) (explaining that it would be harsh and absurd to refuse to hire people who have "been convicted of a crime of

moral turpitude without regard to the remoteness of those convictions or the individual's subsequent performance")); *see also Mudd v. Hoffman Homes for Youth, Inc.*, 543 A.2d 1092, 1098 (Pa. Super. Ct. 1988) (Cercone J., Concurring in Part and Dissenting in part) (stating that § 9125 creates a "public policy against unnecessarily stigmatizing former offenders")[2]; *Cisco v. United Parcel Servs., Inc.*, 476 A.2d 1340, 1343 (Pa. Super. Ct. 1984) ("[C]onvictions for felonies and misdemeanors may be considered only insofar as they relate to an applicant's suitability for the job.  We may assume that this principle is an expression of public policy.") (citing § 9125).    As one law review article put it:

> In addition to disparate impact claims, several states have enacted statutes that directly restrict discrimination against ex-offenders (hereinafter "criminal record statutes"). Under these statutes, employers may not discriminate against an ex-offender if the prior offense bears no reasonable relationship to the job. Unlike disparate impact claims, where the underlying policy interest is combating racial inequity, the primary policy underlying criminal record statutes is the need to rehabilitate ex-offenders in order to reduce recidivism.

Michael Connett, EMPLOYER DISCRIMINATION AGAINST INDIVIDUALS WITH A CRIMINAL RECORD: THE UNFULFILLED ROLE OF STATE FAIR EMPLOYMENT AGENCIES, 83 TEMP. L. REV. 1007, 1039 & n. 294 (2011) (citing § 9125).  By

---

[2]    *Mudd* was later abrogated on grounds not relevant here. *See Yetter v. Ward Trucking Corp.*, 585 A.2d 1022, 1025-26 (Pa. Super. Ct. 1991).

nonetheless (a) limiting the scope of information § 9125 governs and (b) leaving the door open for employers to reject applicants whose prior convictions implicate the specific jobs they are applying for, the legislature maintained respect for employers' interests. *Cf. Cisco*, 47 A.2d at 1344 (applying § 9125 in a manner that balanced the business interests of the defendant employer).

With these goals in mind, it is clear that Defendant's interpretation would undermine the purpose of § 9125.  Under Defendant's interpretation, employers could potentially reserve their right to reject all ex-convicts by avoiding performing background checks and instead compelling applicants to disclose their criminal histories.  This would decrease the number of jobs available to ex-convicts not due to any rational connection between the applicant's past conviction and the job, but instead based purely on stigma towards ex-convicts.  This would directly clash with § 9125's goals.

Defendant's interpretation would create a curious quagmire for courts.  What happens if the employer were to read about a conviction on an application and conduct a background check?  What if there is a short gap, where the background check happens first, but its results are not reviewed until after the application is reviewed?  What if two employers are reviewing the same applicant, and one conducts the background check and just tells the other about it?  Under Defendant's interpretation, it is not clear, but under the court's interpretation today, all of these

questions are quite easily resolved.  As such, the court declines to interpret § 9125 such that it turns on the means in which the employer learns about an applicant's criminal history.

Agreeing with Plaintiff's interpretation nonetheless leaves the court with one problem.  Plaintiff has not pleaded that his past conviction is part of his criminal history record information.  (*See* Doc. 1, ¶¶ 44-51.)  If his past conviction is, for one reason or another, not part of his criminal history record information, this would render § 9125 inapplicable.  Thus, the court will dismiss Count IV without prejudice, permitting Plaintiff the opportunity to amend, if, in fact, he has a good-faith basis for doing so.

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, the court will grant the motion to dismiss without prejudice, giving Plaintiff leave to amend his complaint to potentially remedy the problem.  An appropriate order will follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: August 13, 2020

15